IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY, <br>         **Plaintiff,** <br><br>      v. <br><br> GWSI, INC., <br>         **Defendant/Third-Party Plaintiff,** <br><br>      v. <br><br> THE MORNING STAR COMPANY, <br>         **Third-Party Defendant.** | CIVIL ACTION <br><br><br><br> NO.  25-1391 |

**MEMORANDUM OPINION**

This action was brought by Plaintiff Norfolk Southern Railway Company ("Norfolk") to recover demurrage charges[1] allegedly incurred in connection with rail shipments consigned to GWSI, Inc. ("GWSI") from February 2024 through August 2024.  The Morning Star Company ("Morning Star") allegedly contracted with GWSI for delivery of goods to GWSI's warehouse facility, shipped by rail in railcars released by Norfolk to GWSI.  GWSI allegedly failed to timely return the railcars to Norfolk and thereby incurred the demurrage charges at issue in this suit.  GWSI has impleaded Morning Star, alleging that Morning Star is contractually responsible for any such charges.  Presently before the Court is Morning Star's motion to dismiss GWSI's

---

[1] A demurrage charge is "a charge that both compensates rail carriers for the expenses incurred when rail cars are detained beyond a specified period of time (i.e., free time) for loading or unloading, and serves as a penalty for undue car detention to encourage the efficient use of rail cars in the rail network."  49 C.F.R. § 1333.1.

1

Third-Party Complaint made pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the motion will be denied.

## I.    FACTUAL BACKGROUND

Beginning in or about February 2024 and continuing through August 2024, Norfolk Southern released railcars into the possession of GWSI for loading or unloading, and GWSI accepted and received delivery of those railcars at its warehouse facility.  Norfolk alleges that because GWSI failed to timely return possession of these railcars to Norfolk, demurrage and related charges accrued against GWSI in an amount no less than $365,730.00.

Pursuant to federal law, Norfolk had established rules governing the assessment and calculation of railcar demurrage and related charges.  *See* 49 U.S.C. § 10746 ("A rail carrier providing transportation subject to the jurisdiction of the Board under this part shall compute demurrage charges, and establish rules related to those charges . . .").  Norfolk's rules are set forth in its demurrage tariff, NS 6004-D (the "Demurrage Tariff"), which is publicly available online.  Norfolk alleges that GWSI failed to return the railcars within the allotted free time specified by the Demurrage Tariff and that demurrage charges therefore accrued.

The railcars released to GWSI were allegedly used in connection with a contract between Morning Star and GWSI for the delivery of goods shipped by rail to GWSI's warehouse facility.  GWSI alleges that all such shipments were received pursuant to its Standard Contract Terms and Conditions (the "Contract").  Paragraph 2 of the Contract provides that "Depositor agrees to indemnify and hold Warehouse harmless from all claims for transportation, storage, handling, and other charges relating to such Goods, including . . . rail demurrage . . . ."  Paragraph 6(e) further provides that "[t]he Warehouse shall not be liable for any demurrage or detention, any delays in unloading inbound cars, trailers, or other containers, or any delays in obtaining and

2

loading cars, trailers, or other containers for outbound shipment unless Warehouse has failed to exercise reasonable care." Invoices for the alleged demurrage charges were delivered to GWSI's warehouses and forwarded to Morning Star for payment. Morning Star did not pay them.

GWSI brought this third-party breach of contract claim against Morning Star, alleging that, pursuant to Paragraph 2 of the Contract, Morning Star was required to indemnify and hold GWSI harmless from all claims for, among other things, rail demurrage, and that by failing to remit payment to Norfolk for the demurrage charges, Morning Star breached this contractual duty.

## II.    LEGAL STANDARDS

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" do not suffice. *Id*. at 683. Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. *Great W. Mining & Min. Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 176 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 555).

In evaluating a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). Legal conclusions are disregarded, well-pleaded facts are

taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id*. at 210-11.

A complaint must also be dismissed where, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Thus, dismissal under Rule 12(b)(6) is appropriate where the complaint is barred by a dispositive issue of law.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Documents "integral to or explicitly relied upon in the complaint" may also be considered without converting a motion to dismiss into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted and emphasis removed).

## III. DISCUSSION

### A. Federal Rule of Civil Procedure 14

Morning Star first argues that this Court should strike GWSI's claim against it because GWSI waited too long to file. As a preliminary matter, the Motion is brought under the wrong rubric—Rule 12(b)(6)—rather than as a motion to strike, sever, or try separately under Rule 14(a)(4) which provides "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately." But, even if this Court were to ignore this procedural stumbling block, Morning Star's argument has no traction.

A court's discretion to strike a third-party complaint under Rule 14(a)(4) is generally

exercised with an eye to the following factors: "(1) the timeliness of the Rule 14 motion; (2) whether the filing of the third-party suit would introduce an unrelated controversy or unduly complicate the case at trial; (3) the likelihood and extent of delay in the trial; (4) whether the third-party complaint would avoid multiple litigation and settle related matters in one suit; (5) the merit of the third-party complaint, and finally; (6) the possible prejudice to the plaintiff." *Scott v. Walter Kidde Portable Equip., Inc.*, 2002 WL 1880521, at *1 (E.D. Pa. Aug. 12, 2002).

Here, Morning Star does not dispute that GWSI complied with the timing requirements of Federal Rule of Civil Procedure 14(a)(1) by filing its Third Party Complaint on the same day as its Answer.[2] Its argument that its inclusion in this suit would unduly prejudice it because it will "likely require[] an extended discovery period," thereby prolonging the litigation is now moot in that since it filed this motion, the discovery period has already been extended by joint stipulation of all parties. Further, its argument that if it were to remain in this lawsuit it would be unduly prejudiced by forcing it to incur "immense costs" in the form of demurrage charges that allegedly "continued to accrue during the period in which GWSI neglected to litigate the instant matter," fares no better in light of the "manifest purpose of Rule 14 [] to avoid circuity of action and to settle related matters in one litigation as far as practicable." *Stiber v. United States*, 60 F.R.D. 668, 670 (E.D. Pa. 1973). If Morning Star were to be excluded from this action GWSI would likely file a separate complaint against it thereby creating two cases that arise from the

---

[2] The Rule provides that:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed. R. of Civ. P. 14(a)(1).

exact same set of facts: the demurrage charges levied by Norfolk for railcars containing Morning

Star's goods.  Such an outcome would run directly contrary to Rule 14's purpose.  Rather, the

indemnification claim asserted here is precisely the type of claim contemplated by the rule.  *See,*

*e.g.*, *Vandenhouten v. Olde Towne Tours, LLC*, 2009 WL 1956360, at *5 (D.V.I. July 8, 2009)

("Rule 14(a) clearly permits a third-party complainant to maintain an indemnity claim against a

third-party defendant in the action in which the third-party complainant has been named as a

defendant."). Thus, Morning Star's request to strike the Complaint against it shall be denied.

### B.  Breach of Contract

Morning Star next moves to dismiss GWSI's Third-Party Complaint on the grounds that

it fails to plausibly state a claim for breach of contract.

Under Pennsylvania law, a plaintiff states a claim for breach of contract by alleging: "(1)

the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the

contract, and (3) resultant damages."  *See Udodi v. Stern*, 483 F. Supp.3d 292, 299 (E.D. Pa.

2020).  GWSI alleges that "Morning Star and GWSI were operating pursuant to GWSI's

Standard Contract Terms and Conditions"; that "[p]ursuant to the Contract . . . Morning Star was

to indemnify and hold GWSI harmless from all claims for, among other things, rail demurrage";

and that "Morning Star Company breached its contractual obligations to GWSI by failing to

remit payment to Norfolk Southern for the demurrage charges that arose solely from Morning

Star's shipments."

Morning Star first challenges GWSI's pleading of the first element, arguing that GWSI

has failed to plead both the existence of a valid contract and its essential terms because it does

not attach the operative agreement between the parties, instead attaching "nothing more than a

blank, unsigned version of its 'Standard Contract' with no essential terms or reference to

Morning Star in any capacity."  But a plaintiff need not attach the governing contract to the complaint so long as the complaint adequately alleges its existence by some other permissible means.  *See Clapps v. State Farm Ins. Companies*, 447 F. Supp.3d 293, 297 (E.D. Pa. 2020) ("[I]t is not fatal to Plaintiff's breach of contract claim that the Policy was not attached to the Complaint."); *Jones v. Select Portfolio Servicing, Inc.*, 2008 WL 1820935, at *4 (E.D. Pa. Apr. 22, 2008) ("A plaintiff is not required to attach the subject contract to the complaint or plead its terms verbatim in order to state a claim.").  Under Federal Rule of Civil Procedure 8(a), "a plaintiff [may] assert the existence of an express, written contract either by setting it forth verbatim in the complaint, or the plaintiff may attach a copy as an exhibit, *or plead it according to its legal effect*." *Pierce v. Montgomery Cty. Opportunity Bd., Inc.*, 884 F. Supp. 965, 970 (E.D. Pa. 1995) (internal quotation marks omitted) (emphasis added).  GWSI purports to have pleaded the contract according to its legal effect.

To "plead[] a contract according to its legal effect, . . . the complaint must allege facts sufficient to place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond." *Transp. Int'l Pool, Inc. v. Ross Stores, Inc.*, 2009 WL 1033601, at *3 (E.D. Pa. Apr. 15, 2009).  Morning Star argues "it would be impossible for [it] to adequately answer the substance of GWSI's Third Party Complaint" because the Third-Party Complaint "is devoid of even the most rudimentary elements of any contract, such as price, storage terms, relevant dates, and quantity, and neither do those elements appear on any templated document that was attached."  Despite labeling such details as the "most rudimentary elements of any contract," the additional details Morning Star identifies, such as price, quantity, storage terms, and relevant dates, are not essential to the particular breach alleged here.  *See CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999) (explaining that "not every term of a

contract must be stated in complete detail" for a complaint to survive a motion to dismiss as long as "every element [of a breach of contract claim is] specifically pleaded").

GWSI alleges that Morning Star contracted with GWSI for the delivery of goods pursuant to GWSI's Standard Contract Terms and Conditions.  It further identifies the contractual provision on which its claim rests—Paragraph 2, which allegedly required Morning Star to indemnify and hold GWSI harmless against claims including rail demurrage charges— and alleges that Morning Star breached that obligation by failing to pay the demurrage charges Norfolk seeks to recover.  At the pleading stage, those allegations are sufficient.

Morning Star next argues that GWSI fails sufficiently to plead the second element: breach of a duty imposed by the contract.  Specifically, it maintains that the Third-Party Complaint makes "no mention of whether any invoices were sent to Morning Star, whether Morning Star even knew, or had reason to know, of the demurrage charges being incurred by GWSI, and whether Norfolk ever submitted to Morning Star a request for payment in the first place."  Absent allegations that Morning Star knew the demurrage charges were being incurred and that it was responsible for those charges, it argues that GWSI has not plausibly alleged that it breached any duty.  But the Third-Party Complaint expressly alleges that "[s]aid invoices were sent to Morning Star for payment."  At the motion to dismiss stage, "[p]laintiff need not prove his case; he need only allege facts to make his claims plausible." *Smith v. Se. Delco Sch. Dist.*, 2020 WL 3402435, at *2 (E.D. Pa. June 19, 2020).  Here, the alleged facts plausibly support the inference that Morning Star breached its duty to indemnify GWSI after invoices reflecting the demurrage charges were sent to Morning Star and Morning Star failed to pay them.  Accordingly, Morning Star's motion to dismiss on this ground is denied.

An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

_____

**WENDY BEETLESTONE, C.J.**